UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. C25-611-RSM |
| Plaintiff, | ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| 5.0096804 BTC, 5,327.090 USDT/ERC20, and 496,452.6472 USDT/TRC20, | |
| Defendants. | |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff United States' Motion for Default Judgment. Dkt. #19. The Government requests the forfeiture of all interest, except for Claimant Eigen Labs, Inc., in several cryptocurrency properties. *Id*. No defendants or potential claimant has opposed the Motion or otherwise appeared. For the following reasons, the Court will grant the Government's Motion.

## II.    BACKGROUND

The Court includes the following relevant facts from the Government's Complaint and incorporates the provided cryptocurrency terms and definitions. *See* Dkt. #1 at ¶¶ 17-27.

Target Property 1 is a Virtual Currency Exchange account held at Payward Interactive, Inc. (d/b/a "Kraken") ending in account number BMYY. *Id*. Target Property 2 is an unhosted

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 1

address on the Tron blockchain. *Id*. at ¶ 42.

The collective Defendant Cryptocurrency consists of 5.0096804 BTC and 5,327.909 USDT/ERC20 ("Defendant Cryptocurrency 1") and 496,452.6472 USDT/ERC20 ("Defendant Cryptocurrency 2"). *Id*. at ¶ 5-7.

The Internal Revenue Service—Criminal Investigation ("IRS-CI") is investigating a phishing scheme associated with Claimant Eigen Labs, Inc.'s virtual currency platform. Dkt. #1 at ¶ 28. An estimated $6,000,000 in Eigen Labs' virtual currency tokens were stolen. *Id*. Eigen Labs, a software development company based in Washington, focuses on blockchain-based infrastructure projects using Victim Tokens as "native tokens" for protocol, which are used to pay for computational resources. *Id*. at ¶ 29. Eigen Labs solicited investors to fund projects, and investors received Victim Tokens as part of the investment. *Id*. Prior to the above theft, Eigen Labs was in the process of transferring Victim Tokens to various custodians on behalf of the investors, requiring investors to provide virtual currency addresses to receive payments. *Id*.

In September 2024, Investor 1 provided an address and was sent a test transfer. *Id*. at ¶ 30. This address included the domain "iosg.vc." *Id*. at ¶ 31. In October 2024, Eigen Labs received a nearly identical email allegedly from Investor 1 providing a different address to receive payments. *Id*. at ¶ 32. This email domain was slightly different from Investor 1's: "losg.vc." instead of "iosg.vc." *Id*. at ¶ 33. The intended custodian email address was also different: "anchoraqe.com" instead of "anchorage.com." *Id*. at ¶ 34-35. These phishing domains were registered with the same registrar on the same day as the email to Eigen Labs. *Id*. at ¶ 35.

Using these phishing domains, the attacker requested a test transfer, which Eigen Labs sent in October 2024. *Id*. at ¶ 36. Upon receipt of 1,673,644 Victim Tokens, the attacker began converting them to "stablecoins," such as USDT and USDC, through a decentralized Virtual Currency Exchange ("VCE"). *Id*. From the decentralized VCE, the attacker further laundered

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 2

the funds by sending some of the now USDC and USDT to a non-custodial instant swapping VCE to convert them to approximately 15.5 BTC, worth roughly $954,000 at that time. *Id*. at ¶ 37. Non-custodial instant swapping VCEs facilitate cryptocurrency swapping (such as trading USDC for BTC) at high speeds, decreasing the chance of frozen funds. *Id*. The 15.5 BTC were then transferred between five intermediary addresses in a "peel chain," a series of transactions, before consolidating in a VCE account held at Kraken, Target Property 1. *Id*. at ¶ 38; Dkt. #19 at 5. This "is a common method that criminals use to launder the funds by obscuring the control, ownership, source, and purpose of the funds involved in the transfers." *Id*.

Target Property 1 received four BTC traceable deposits on October 4 and 5, 2024, for over 13.05 BTC or $310,000. *Id*. at ¶ 39. Target Property 1 was created around September 23, 2022, using a Danish male's passport to authenticate the account. *Id*. at ¶ 41. The first three deposits were converted from BTC to USDT and withdrawn to Target Property 2. *Id*. at ¶ 39. As of November 6, 2024, Target Property 2 holds 496,452 USDT or $496,717 and 1,245 TRX (the Tron blockchain's native currency, approximately $203). *Id*. at ¶ 44. The combined value of the Target Properties was approximately $883,000 at the time the seizure warrant was issued. *Id*.

On November 8, 2024, United States Magistrate Judge Paula L. McCandlis issued two seizure warrants for the contents of Target Properties 1 and 2. *Id*. at ¶ 4. Around that same day, IRS-CI served the first seizure warrant on Kraken, who then transferred Defendant Cryptocurrency 1 to IRS-CI. *Id*. at ¶ 5. Around November 9, 2024, IRS-CI served the second seizure warrant on Tether, who transferred Defendant Cryptocurrency 2 to IRS-CI around February 25, 2025. *Id*. at ¶ 6. Valued at $416,140 and $496,452 as of April 2, 2025, Defendant Cryptocurrency remains in IRS-CI custody. *Id*. at ¶ 5-6.

The Government filed the Complaint, verified by an IRS-CI Special Agent, and provided

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 3

notice of this action to known potential claimants on April 4, 2025. *Id*.

On April 7, 2025, the Clerk of Court entered a Warrant of Arrest *In Rem* to arrest and seize the Defendant Cryptocurrency. Dkt. #3. Custody was confirmed on April 10, 2025. Dkt. #4.

On May 8, 2025, Government counsel filed a declaration that Notice of Civil Forfeiture was posted to an official government site (www.forfeiture.gov) for at least thirty consecutive days, beginning on April 8, 2025. Dkt. #5.

On May 9, 2025, Claimant Eigen Labs filed its Claim, verifying its interest in the seized Defendant Cryptocurrency, and filed its Answer on May 30, 2025. Dkts. #7, #14.

On July 1, 2025, the Government moved for default in this case. Dkt. #16. The Clerk entered the Order for Default as to all potential claimants other than Eigen Labs the same day. Dkt. #18.

On July 10, 2025, the Government filed the instant Motion. Dkt. #19. The Government claims that Defendant Cryptocurrency is subject to forfeiture: (1) under 18 U.S.C. § 981(a)(1)(A) for money laundering, in violation under 18 U.S.C. § 1956(a)(1)(B)(i); and (2) under 18 U.S.C. § 981(a)(1)(C) for wire fraud, in violation of 18 U.S.C. § 1343. Dkt. #1 at ¶ 45.

### III.    DISCUSSION

**A. Jurisdiction and Procedural Requirements**

Before entering a default judgment, the Court must confirm that it has subject matter jurisdiction over the case, *in rem* jurisdiction over the defendant, and that all interested parties were adequately served. *See Peoples Bank v. Lou*, CASE NO. 21-05720-LK, 2022 WL 503781, at *2 (W.D. Wash. Feb. 18, 2022). The Court has subject matter jurisdiction under 28 U.S.C. § 1345, which provides original jurisdiction to district courts over all civil actions brought by the United States. This Court has *in rem* jurisdiction over the Defendant Cryptocurrency because

the Court issued a Warrant of Arrest *In Rem* under Supplemental Rule G(5) of the Federal Rules of Civil Procedure, which was successfully served in this district. Dkts. #3, #4, #5.

The Court must also ensure that the proper procedural requirements have been met. Under 18 U.S.C. § 981(b)(2)(A), a seizure may be made without a warrant if the United States files a complaint for forfeiture in the district court and if the court issues an arrest warrant *in rem* pursuant to the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. The complaint must be verified, state the grounds for jurisdiction and venue, describe the property "with reasonable particularity," identify the forfeiture statute, and "state sufficiently detailed facts to support a reasonable believe that the government will be able to meet its burden of proof at trial. Supp. Adm. R. G(2)(a)-(f). The clerk must then issue a warrant to arrest the property if it is in the government's possession, custody, or control, and process must be executed on the property. *Id*. at G(3)(b)-(c). The government must give notice to potential claimants by publication and by sending direct notice of the pending action to any person who reasonably appears to be a potential claimant. *Id*. at G(4)(a)-(b).

Here, the Government filed a verified Complaint, which provides all the required information. Dkt. #1. The Clerk of Court issued an *in rem* warrant for the Defendant Cryptocurrency, process receipt and return was posted, and the Government posted notice of this forfeiture action on an official government site (www.forfeiture.gov) for at least 30 consecutive days, beginning April 8, 2025. Dkts. #3-5. The Government also provided notice of the verified Complaint to potential complaints. Dkt. #2. Accordingly, the Court finds that the all procedural requirements have been met.

**B. Default Judgment**

Given the entry of default in this case, the Court may use its discretion to enter a default judgment. *See* Fed. R. Civ. P. 55(b); LCR 55(b). When examining the merits of a default

judgment, the Court takes well-pled allegations in a complaint as true. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Though default judgments are "ordinarily disfavored, the Court analyzes seven factors to determine whether default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Those factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim(s); (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

In applying this test, the Court finds Plaintiff's Complaint to be well-pled and therefore takes its allegations as true.

**(1) Possibility of Prejudice to Plaintiff**

The Court finds that there is a great possibility of prejudice to the Government because without a default judgment, the Government would be required to litigate even though no potential claimants have appeared in this case or have no other remedy. *See United States v. 391.5873617 in Bitcoin*, No. 2:20-cv-11712-CAS(JCx), 2021 WL 1627694, at *3 (C.D. Cal. Apr. 26, 2021) (citing *United States v. Approximately $194,752 in U.S. Currency*, No. 11-cv-1400-EMC, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011)). This factor weighs in the Government's favor.

**(2) Merits of the Substantive Claims and**

**(3) Sufficiency of the Complaint**

The second and third Eitel factors are generally analyzed together. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). For civil forfeiture actions, "the burden of proof is on the Government to establish, by a preponderance of the

evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c)(1).  The Government must also establish a "substantial connection between the property and the offense" if its theory is that the property was used to commit or was involved in a crime.  *Id*. at § 983(c)(3).

The Government claims that Defendant Cryptocurrency is subject to forfeiture: (1) under 18 U.S.C. § 981(a)(1)(A) for money laundering, in violation under 18 U.S.C. § 1956(a)(1)(B)(i); and (2) under 18 U.S.C. § 981(a)(1)(C) for wire fraud, in violation of 18 U.S.C. § 1343.  Dkt. #1 at ¶ 45.

Taking the factual allegations in the verified Complaint as true, these factors favor default judgment.  The Complaint establishes that: Claimant Eigen Labs fell victim to an email phishing scheme from two different domains, registered the same day; Eigen Labs thought these emails were from legitimate investors, but the email's domain names were slightly changed; upon request from the attackers, Eigen Labs sent two test transfers totaling over 1.67 ERC-20 tokens; the attackers then converted the tokens to USDT and USDC stablecoins through a decentralized VCE, then further laundered the tokens by sending some via a non-custodial instant swapping VCE and a peel chain to swap the currency at high speeds and conceal the nature, location, source, ownership, and control of the stolen proceeds.  Dkt. #1 at ¶¶ 28-38.  An Internal Revenue Service Special Agent verified these facts from his successful tracking of the funds.  *Id*. at 17-18 (Verification of IRS Special Agent Allen).  Accordingly, the Court finds that sufficiency and merits of the Government's claims favor default judgment.

**(4) Sum of the Money at Stake**

"In weighing this factor, courts take into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct." *Curtis*, 33 F. Supp. 3d at 1212 (quotations omitted).

The "sum of the money at stake" here, as of recent valuation, is approximately $912,862. Dkt. #19 at 11. Though not an insubstantial amount, the Government has sufficiently demonstrated that this sum of money was stolen or taken by wire fraud and involved in money laundering transactions, in violation of federal law." *United States v. Approximately 3879.16242937 bitcoin*, No. 21-cv-02103-AJB-JLB, 2022 WL 2128908, at *4 (S.D. Cal. Apr. 18, 2022). Considering the amount and conduct, this factor also weighs in favor of default judgment.

**(5) Possibility of Dispute as to Material Facts**

Given the record here and the lack of appearance by any potential claimants except Eigen Labs, the Court finds little possibility of a dispute concerning material facts.

**(6) Excusable Neglect**

The Court is satisfied by the Government's compliance with notice requirements here, and no potential claimants besides Eigen Labs have appeared. *See United States v. Approximately $72,000 in U.S. Currency*, No. C 08-1305 JCS, 2009 WL 506866, at *4 (N.D. Cal. Feb. 7, 2009) (finding "no evidence that default was due to excusable neglect given that . . . Plaintiff provided adequate service and notice to the parties known to have interest in the property"). This factor also weighs in favor of default judgment.

**(7) Policy Favoring Decisions on the Merits**

The Court agrees with the Government that where, as here, potential claimants' failure to appear makes a decision on the merits "an impractical if not impossible task." Dkt. #19 at 13 (quoting United States v. Approximately $57,890 in U.S. Currency, No. C 10-01829 WHA, 2010 WL 3987397, at *4 (N.D. Cal. Oct. 12, 2010). Thus, any policy preference for deciding cases on the merits does not preclude the Court from entering a default judgment.

In sum, the *Eitel* factors weigh in favor of granting the Government a default judgment.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 8

## IV. CONCLUSION

Having reviewed the instant Motion and remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff United States' Motion for Default Judgment, Dkt. #19, is GRANTED.

2. Defendant Cryptocurrency (including 5.0096804 BTC, 5,327.909 USDT/ERC20, and 496,452.6472 USDT/ERC20) is fully and finally condemned and forfeited to the United States, subject to the potentially superior interest of Claimant Eigen Labs, Inc.

3. No right, title, or interest in Defendant Cryptocurrency shall hereafter exist in any party other than the United States, subject to the potentially superior interest of Claimant Eigen Labs, Inc.

DATED this 27th day of October, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE